UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| SCOTT T. KUCK, as PERSONAL REPRESENTATIVE OF THE WRONGFUL DEATH CLAIM OF SARAH LEE CIRCLE BEAR, deceased <br><br> Plaintiff, <br><br> v. <br><br> SHERIFF MARK MILBRANDT, BROWN COUNTY SHERIFF'S OFFICE, BROWN COUNTY JAIL, SHERIFF JAY TASA, ROBERTS COUNTY SHERIFF'S OFFICE, ROBERTS COUNTY JAIL, DEPUTY ANDY MILLER, TROOPER JERRY KASTEIN, JILLYN BROOKS, JOELLE THOMAS, TANYA MITCHENER, PAM SMID, HARMONY MATTSON, JOHN/JANE DOE SUPERVISORS 1-5, JOHN/JANE DOE OFFICERS 1-10, Individually and in their official capacity, JOHN/JANE DOE MEDICAL STAFF 1-5, <br><br> Defendant. | **1:18-CV-1014-CBK** <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR WRONGFUL DEATH AND CIVIL RIGHTS VIOLATIONS

Plaintiff, Scott T. Kuck, as Personal Representative of the Wrongful Death Claim of Sarah Lee Circle Bear, Deceased, by and through his undersigned counsel, alleges and complains as follows:

### I. PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, Scott T. Kuck (hereinafter "Plaintiff") is the personal representative for the wrongful death claim of Sarah Lee Circle Bear, who was twenty-four years old at the time of

her death and a resident of Dewey County, South Dakota.   Plaintiff was appointed as personal

representative by the Fifth Judicial Court, County of Brown on April 3, 2018 (Case No.

06PRO16-113).

2.      Upon information and belief, Defendants Brown County Sheriff's Office and

Brown County Jail (hereinafter "Defendants Brown County") are local governmental entities

organized and existing under the laws of the State of South Dakota and are "persons" subject to

suit herein.

3.      Upon information and belief, Defendant Sheriff Mark Milbrandt (hereinafter

"Defendant Milbrandt"), was an individual employed by Defendants Brown County and at all

times material hereto was acting within the course and scope of his employment and under the

color of law.

4.      Upon information and belief, Defendants Roberts County Sheriff's Department

and Roberts County Jail (hereinafter "Defendants Roberts County") are local governmental

entities organized and existing under the laws of the State of South Dakota and are "persons"

subject to suit herein.

5.      Upon information and belief, Defendant Sheriff Jay Tasa (hereinafter "Defendant

Tasa"), was an individual employed by Defendants Roberts County and at all times material

hereto was acting within the course and scope of his employment and under the color of law.

6.      Upon information and belief, Defendant Deputy Andy Miller (hereinafter

"Defendant Miller") is an individual employed by Defendants Roberts County and at all times

material hereto was acting within the course and scope of his employment and under the color of

state law.

7.      Upon information and belief, Defendant Trooper Jerry Kastein (hereinafter "Defendant Kastein") is an individual employed by the South Dakota Highway Patrol and at all times material hereto was acting within the course and scope of his employment and under the color of state law.

8.      Upon information and belief, Defendant Jillyn Brooks (hereinafter "Defendant Brooks") is an individual employed by Defendants Roberts County and at all times material hereto was acting within the course and scope of her employment and under the color of state law.

9.      Upon information and belief, Defendant Joelle Thomas (hereinafter "Defendant Thomas") is an individual employed by Defendants Roberts County and at all times material hereto was acting within the course and scope of her employment and under the color of state law.

10.     Upon information and belief, Defendant Tanya Mitchener (hereinafter "Defendant Mitshener") is an individual employed by Defendants Brown County and at all times material hereto was acting within the course and scope of her employment and under the color of state law.

11.     Upon information and belief, Defendant Pam Smid (hereinafter "Defendant Smid") is an individual employed by Defendants Brown County and at all times material hereto was acting within the course and scope of her employment and under the color of state law.

12.     Upon information and belief, Defendant Harmony Mattson (hereinafter "Defendant Mattson") is an individual employed by Defendants Brown County and at all times material hereto was acting within the course and scope of her employment and under the color of state law.

3

13.     Upon information and belief, Defendants John/Jane Doe Supervisors 1-5 (hereinafter "Defendant Doe Supervisors") are individuals employed by Defendants Brown County and/or Defendants Roberts County and at all times material hereto were acting within the course and scope of their employment and under the color of state law.

14.     Upon information and belief, Defendants John/Jane Doe Officers 1-10 (hereinafter "Defendant Doe Officers") are individuals employed by Defendants Brown County and/or Defendants Roberts County and at all times material hereto were acting within the course and scope of their employment and under the color of state law.

15.     Upon information and belief, Defendants John/Jane Doe Medical Staff 1-5 (hereinafter "Defendants Doe Medical Staff") are individuals employed by Defendants Brown County and/or Defendants Roberts County and at all times material hereto were acting within the course and scope of their employment and under the color of state law.

16.     At all times relevant to this Complaint, all Defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to Sarah.

17.     Some employees who had contact with Sarah Lee Circle Bear were law enforcement officers within the meaning of SDCL § 23-3-27.

18.     Sarah Lee Circle Bear, was the mother of Zachery Wayne Alan Pahl, born March 13, 2012 and Aiden Lane Pahl, born September 4, 2013, who are the sole heirs of her estate.

19.     Given the above, jurisdiction and venue are proper.

4

## II. GENERAL ALLEGATIONS

20.     On July 3, 2016, Sarah Lee Circle Bear was a passenger in a vehicle driven by Wayne Pahl, and was arrested after ordered out of the car at gunpoint.   At that time, as noted in the police report, Sgt. Meland said Sarah told him that Pahl had eaten a large amount of Methamphetamine during the pursuit.

21.     Defendant Andy Miller transported Ms. Circle Bear to Defendant Roberts County Jail where she was booked by John Goehring at 9:52 a.m.   Upon information and belief, no medical personnel were present at the Jail to examine Ms. Circle Bear on her admission or thereafter or to evaluate her condition.   Upon information and belief, her vitals were never taken, and her condition was never assessed to determine whether she was having a possible drug overdose.   After booking, Sarah was placed in a small holding cell with bright fluorescent lights, small windows so she could be observed, and a bathroom.   She was given a mattress to put on the floor and 2 small blankets.

22.     As shown on the Roberts County Jail video, Sarah was visibly upset, rocking back and forth, shaking her head and crying.   Within fourteen (14) minutes of being placed in the cell, she began to pace around, seeming disoriented, agitated and out of balance.   She went into the bathroom, coming out 5 seconds later, sitting down and continuing to rock back and forth. She would get up and pace, going to the door and appearing to try to communicate with someone outside the holding cell.   As time went on, Sarah would hunch over, holding her stomach as if in pain.

23.     This behavior (sitting, rocking, pacing and putting her face on the door) continued for over forty (40) minutes, at which time she was given a food tray and a drink.   After just a few bites, Sarah pushed the tray away.

5

24.     At that time, Sarah had been in the holding cell for over 45 minutes.

25.     At 12:08 p.m., Defendant Kastein arrived at Brown County Jail, entered the holding cell and interviewed Sarah, who gave him an account of what had occurred during the past couple of days, including the fact that the driver of the vehicle, Wayne Pahl, had eaten methamphetamine during the chase.

26.     At that time, she stated she had used methamphetamine about a month ago, but when asked by Defendant Kastein if her urine would be clean, she admitted to having "done one hit" the previous day.

27.     Defendant Kastein told her he was charging her with ingesting drugs and possession of drug paraphernalia.   He asked Roberts County Jail staff, and they were able to get a judge to grant a personal recognizance bond.   Sarah said she would be willing to speak with an agent to discuss the drug information she had given him.

28.     At that time, after approximately a half an hour of speaking with Ms. Circle Bear, Defendant Kastein learned that the driver of the vehicle, Wayne Pahl, was being transferred to the Sanford Hospital in Fargo for a possible overdose.   He concluded the interview and left the jail at 12:55 p.m.

29.     After Defendant Kastein left, Sarah returned to sitting and rocking, crying, sitting on the floor of the cell.   After a few minutes, she took the untouched food tray and put it through the slot in the door.

30.     After another few minutes of rocking and crying, Sarah asked for the bathroom to be opened.   She went into the bathroom, and an officer entered the cell to check on her, standing outside the bathroom with the door ajar.   The officer left the room and Sarah came out of the bathroom and returned to rocking and crying.   She again went to the cell door and after a few seconds was handed a roll of toilet paper which she placed in the bathroom.

31.     Again, Sarah sat crying and rocking.   After several minutes she spoke with someone outside the cell, went to the cell door and stepped out of the cell for about ten (10) seconds and returned.

32.     Shortly after, she again went to the bathroom, being in for less than eight (8) seconds.   At this point, Sarah had been in the cell for about an hour and a half, seemed to be getting more and more agitated, pacing, crying at the door, standing with her face to the wall, finally sitting on the floor with her head on her knees.   She was increasingly showing signs of methamphetamine overdose.

33.     After about one (1) hour and forty-five (45) minutes, a corrections officer entered her cell and sat down.   He remained in the cell for about seven (7) minutes during which time Sarah was agitated and fidgeting, and clutching her stomach.   It is unknown what conversation occurred during this visit, but the officer clearly had time to assess Sarah's condition.   Nothing was done.

34.     For the next several hours, Sarah's condition continued to deteriorate.   She could not sit still.   She was alternately sitting or lying on the floor, often in the fetal position clutching her stomach, standing facing the wall or door, seemingly speaking to someone and/or hallucinating, pacing back and forth, and going in and out of the bathroom.   She would clutch her stomach, lay writhing in pain on the floor or rocking while holding her stomach.

35.    After approximately three and one half (3 ½) hours, a female corrections officer with "Roberts County" on the back of her shirt, entered the cell and stood by the bathroom door talking with Sarah, who was sitting on the floor.   The officer left the cell after less than 3 minutes at which point Sarah returned to pacing, sitting or laying on the floor.

36.    When she had been in the cell for just under four (4) hours, a food tray was passed through the door.   Sarah spent less than 4 minutes picking at the food and taking only a couple of bites before passing the tray back out of the door.

37.    At that point, she seemed to be out of balance, paranoid and agitated.   She continued to deteriorate over the next couple of hours, appearing unstable and disoriented.   She continued pacing, alternately sitting or laying on the floor, holding her stomach and rocking.

38.    After four and one half (4 ½) hours, she was given some paperwork which she filled out and returned through the door.   At that time, she was given some type of medication, which she took.

39.    Again, she was restless, agitated and continued to clutch her stomach.

40.    During the course of her being held in the cell, she went to the bathroom no less than forty five (45) times.   It is unknown, but upon information and belief, many of these times she was vomiting.

41.    She was held until 9:06 p.m. before being released by Defendant Brooks to an officer from the Brown County Sheriff's Office (Doe Officer) and transferred to Brown County Jail.

42.     When she entered the garage to be transported, she was placed in the back seat of the vehicle and the officer went to the driver's seat.   He had barely closed his door when he immediately opened it, ran around to Sarah's door and opened it, dragging a garbage can to the door where Sarah vomited again.   A female Roberts County Officer, bearing physical similarity to the female officer referenced in Paragraph 26, came to the garage and provided a hand towel which Sarah used to wipe her mouth.

43.     Upon information and belief, when Sarah arrived at Brown County Jail, no medical personnel were present at the Jail to examine Ms. Circle Bear on her admission or thereafter or to evaluate her condition.   Upon information and belief, her vitals were never taken, and her condition was never assessed to determine whether she was having a possible drug overdose.

44.     When she initially arrived at Brown County Jail, Sarah had to wait for a cell to be opened for her.   According to witnesses, she paced around the common area and in and out of open cells, sometimes sitting on the floor between the toilet and shower, then getting up and pacing again.   Crying the whole time, Sarah reported that she was going to have an anxiety attack.   She seemed confused, talking to herself.   She was winded and couldn't seek to catch her breath.   She talked about killing herself or killing someone else.

45.     Several of the inmates expressed that they were afraid of her and a group of them wrote and signed a letter stating that they were afraid for her and of her.   They gave the letter to a jailer named "Joe".

46.     The witness stated that a couple of male jailers entered Sarah's cell.   She was taking a shower so they told her to get out of the shower and hurry up.   She said "I'm getting dressed."

47.     The jailers left, taking Sarah with them, returning her to the cell a couple of hours later at which time she continued to pace.   She ultimately returned to cell F-2 and sat down on the floor between the toilet and shower, every now and then coming out to check to see if the F-1 cell was open yet.   The girl that was in the F-1 cell was finally released and Sarah went in.   She put her things on the bed and crawled under the bed stating "Don't mind me, I'm weird and need to be alone."

48.     She then got up and went in the shower, staying there all evening, crying and talking to herself.

49.     On July 5, 2015, around 5:00 a.m., Sarah was observed to be sleeping on her bunk with no covers.   Around 7:00 a.m. she was observed to be pacing and walking in and out of her cell.   She then walked over to the emergency button and pushed it.   She told the female jailer who responded that she was having trouble breathing and couldn't catch her breath.   They responded with "Oh Sarah, you always act like this when you come to jail.   Don't press the button again if it's not an emergency."

50.     Sarah again began to pace around and cry and try to catch her breath.   Around 8:00 a.m. Sarah again pressed the emergency button and told the female jailer that her heart hurt and was beating fast.   Again, she was denied help, the jailer stating again "you always act like this."   Sarah returned to her cell.

51.     Around 8:25 a.m., Sarah was observed to be laying on the floor between the two built-in stools by the phone, hanging on to one tightly.   She had urinated herself and was sweating excessively, her hair was wet.

52.     A white inmate got up, pushed the emergency button and told the jailers they needed to come because "something is wrong with Sarah," explaining what she was doing and how she looked lying on the floor.

53.     Finally, two (2) female jailers came to the cell, standing on the other side of the bars and saying to Sarah, "Why do you always do this every time you come to jail?"   Finally, they entered the cell and told Sarah to get up.

54.     Sarah's body was shaking and trembling.   She managed to sit on the stool she was hanging on to, talking to herself, saying "sit down" and the reaching in the air like she was trying to grab something.   Her eyes were rolling around and it was obvious that something was definitely wrong.

55.     The jailers continued to tell her to get up and that she could walk.   Sarah finally managed to help herself up and, hanging on to whatever she could to walk herself out of the cell into the hallway.   The jailers were heard to say "Oh Sarah, knock it off now, you always do this."   Sarah was crying like there was something truly wrong with her.   As they got further down the hall, she could still be heard crying loudly.

56.     Joe (last name unknown) was heard yelling at her "Knock it off Sarah, get up!" Sarah was heard moaning and crying and then Joe yelled "I'm going to get the wrap!"

57.     Another inmate yelled out "Why don't you guys UA her before you treat her like that?"

58.     It went quiet except for the sound of Sarah crying.   She again started screaming and crying, which slowly faded away.

59.     It seemed clear to witnesses that there was discrimination against Sarah because she was Native American.   A witness reported that many Native Americans are discriminated against in that their medical needs are ignored.

60.     Not long after that, Aberdeen Fire & Rescue was dispatched to Brown County Jail for a female subject who "is unresponsive and not breathing."   Upon arrival on the scene, they were met in the Sally Port by a deputy who took them to the holding cell where Sarah was being given manual chest compressions and ventilations by jail personnel and had an AED next to her, but the paddles had not been placed yet.

61.     Jail personnel advised the EMS crew that Sarah had been brought to the jail on July 3, 2015, for possible methamphetamine use and that they thought that is what she may have overdosed on.   Jail staff provided a set of vital signs taken per the in-house nurse who was apparently "observing the pt. for now" while Sarah was lying in the holding cell.

62.     At 9:00 a.m. Sarah's heartrate was noted to be 154 bpm with a blood pressure of 88/71.   At 9:45 a.m., the last time Sarah was seen alive, her heart rate was 134 bpm and her blood pressure was 96/54. Despite this alarming heart rate and blood pressure, no medical attention was given and EMT was not called until 10:37 a.m.

63.     It only took EMT two minutes to arrive at the facility.

64.     Initial findings showed no pulse or respiration when EMS made contact at 10:39. Upon information and belief she died well before this time.

65.     EMS administered Epinephrine and Narcan.   Her tympanic temperature was 103°F.   At 11:11, they transported Sarah to Avera St. Lukes ER and turned over her care.   Of course, by that time, it was too late, and Sarah was pronounced dead.   The autopsy report lists the cause of death as Acute Methamphetamine and Amphetamine Toxicity.

66.     What is particularly disturbing is that after fifty (50) hours in custody, much of the time spent asking for assistance, that it was only when another inmate called for help that Sarah received medical attention.   However, this "medical attention" was nothing more than being thrown in a room alone to die.

67.     Symptoms of methamphetamine overdose include: hyperactivity, paranoia, agitation, fast breathing, high or low blood pressure, confusion, shakiness, aggressiveness, hallucinations (auditory or visual), seizures and severe stomach pain.   Over the course of the hours Sarah was in the holding cell at Roberts County, and in the cell at Brown County, she demonstrated most, if not all of these symptoms.

68.     During the time period at issue herein, patterns of Methamphetamine abuse showed particular significant increases among young people of the same demographic background as Ms. Circle Bear.

69.     Reasonably trained correctional health practitioners and law enforcement officers were or should have been aware of these patterns of increased abuse of Methamphetamine.

70.     Reasonably trained correctional health practitioners and law enforcement officers were or should have been particularly attuned to patterns of Methamphetamine abuse due to the disproportionately high number of Methamphetamine abusers typically present in a population of arrestees/pretrial detainees.

71.     Reasonably trained correctional health practitioners and law enforcement officers were or should have been likewise aware of the significant risk of overdose among Methamphetamine users.

72.     Although Methamphetamine overdose is a highly dangerous and potentially deadly emergency, there were, in 2015, readily available and effective means of medical intervention to reverse the effects of overdose.

73.     In 2015, reasonably trained correctional health practitioners, guards, and law enforcement officers were aware of the available and effective means of intervention to reverse the effects of Methamphetamine overdose.

74.     Additionally, reasonably trained correctional health and law enforcement supervisors were aware of their responsibilities to train correctional health personnel, guards, and law enforcement officers to recognize the signs of overdose and to intervene to reverse the effects of overdose.

75.     It is clear that Sarah was not being watched at all.   Her vital signs, as reported to the EMS team, alone would have warranted an emergency transport.   Additionally, jail personnel knew that her friend, who was arrested at the same time as Sarah, experienced an acute drug intoxication occurring shortly after his arrest which required hospitalization as he had reportedly swallowed drugs in his possession at the time he was taken into custody.

76.     It is unconscionable that Sarah was not afforded the same medical intervention which most certainly would have saved her life.   In fact, according to witnesses, had the jail personnel treated Sarah's complaints seriously, she would still be alive today.

77.     Defendants, individually, and in conspiracy with one another, engaged in the conduct described above under the color of law.   The individual Defendants named above knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved the conduct described above individually and in their official capacities with the Jails.

14

The offenses described above resulted from the failure of the state and county agencies and the supervisory officials named above to employ qualified persons for positions of authority, and/or to properly or conscientiously train and supervise the conduct of such persons after their employment, and/or to promulgate appropriate operating policies and procedures either formally or by custom to protect the constitutional rights of Plaintiff's decedent.   Defendants' conduct was intentional and grossly negligent, indicated active malice toward Ms. Circle Bear and a total, deliberate and reckless disregard for and indifference to her life and her constitutional and common law rights, and justifies and award of punitive damages in addition to the actual damages her estate is entitled to recover.

78.     Both Brown County jail and Roberts County Jail are understaffed and overcrowded. As a result, this leads to inadequate care of the inmates housed at each facility.

79.     At all times material hereto, the individually named Defendants were employees and/or agents of Defendants acting under the direction and control of Defendants and acting within the course and scope of their employment and/or agency.

80.     Plaintiff seeks damages for the wrongful death of Sarah Lee Circle Bear, physical and mental injuries she sustained prior to her death as the result of the medical negligence and inadequate medical treatment she received from named Defendants.

## IV. CLAIMS FOR RELIEF

### COUNT ONE: Negligence – All named Defendants

81.     Plaintiff incorporates and adopts by reference all the facts and allegations contained in this Complaint for purposes of this claim.

82.     Defendants owed Sarah a duty and as stated herein, they breached their duties to Sarah including but not limited: negligence in the care, management, and treatment of Circle

Bear; failing to recognize, treat, and evaluate Circle Bear's emergency condition in direct contradiction to their duties; disregarding Circle Bear's emergency condition in direct contradiction to their duties; and any other manner revealed in discovery.

83.     Both Brown County jail and Roberts County Jail are understaffed and overcrowded. As a result, this leads to inadequate care of the inmates housed at each facility.

84.     Defendants' negligence was reckless, willful, wanton, and in callous disregard of Sarah's healthcare needs. As such, punitive damages should be awarded against them to deter future conduct as alleged here.

85.     Plaintiff believes, and, after reasonable discovery will show, that Ms. Circle Bear's treatment by Defendants was not unusual, but was part of a continuing pattern of Defendants of willfully and deliberately ignoring the medical needs of inmates of the Jail following their arrest for drug offenses.   Such conduct is the result of customs and practices of the State of South Dakota, Defendant Milbrandt, Defendant Tasa, and Defendants Roberts and Brown Counties, either written or unwritten, that are systematically applied to all persons who, through no fault of their own, exhibit such conditions or problems while incarcerated at the Jails. Such practices constitute an arbitrary use of government power, and evince a total, intentional, deliberate and unreasonable disregard for and indifference to the lives and constitutional and common law rights of inmates at the Jail, including Ms. Circle Bear, and the wholesale violations of those rights likely to result from the regular and systematic pursuit of such practices.

86.     Defendants' breach as stated herein caused Circle Bear's death and damages.

87.     Defendants Roberts County Sheriff's Department, Sheriff Mark Milbrandt, Sheriff Jay Tasa, Roberts County Jail, Brown County Sheriff's Office, and Brown County Jail are liable for the acts of their contractors and employees, including but not limited to the named

Doe Defendants.

## COUNT TWO[1]: §1983 Eighth Amendment and Fourteenth Amendment Violation – Failure to Provide Medical Care and Treatment (Against all named Defendants)

88.     Plaintiff incorporates all other paragraphs of this Complaint for purposes of this claim.

89.     Defendants had a custom, policy, or practice of acting knowingly and with deliberate inference in denying obviously necessary medications, medical services, and hospitalizations to persons who are in custody and inmates at Roberts County Jail and Brown County Jail, including Sarah Lee Circle Bear.

90.     Both Brown County jail and Roberts County Jail are understaffed and overcrowded. As a result, this leads to inadequate care of the inmates housed at each facility.

91.     Defendants all knew of Circle Bear's serious medical condition.   Nonetheless, with deliberate indifference to Sarah's Eighth Amendment constitutional right to be free of cruel and unusual punishment and Sarah's right to due process of law under the Fourteenth Amendment to the United State Constitution, these Defendants made no effort to obtain adequate and timely medical treatment for Sarah, including basic testing for her suspected ingestion of drugs.

92.     Sarah Circle Bear was denied the benefits of services, programs, and activities including but not limited to the benefits of basic health testing, prompt medical attention, and being treated with dignity by the government entity sworn to protect its citizens.

---

1   Plaintiff, under the due process clause of the fourteenth amendment has and had the same rights as pre-trial detainee and convicted inmate under the Eighth Amendment of the United State Constitution.

93.     Defendants not only ignored Sarah's obvious serious medical needs, but also placed her at risk of substantial physical harm and death.

94.     The acts and omissions of Defendants were within the scope of their official duties and employment.

95.     The acts and omissions of Defendants were the legal and proximate cause of Sarah's death.

96.     Defendants, both on their own and through their employees, had an official policy, custom, or practice that was deliberately indifferent to Sarah's Eighth Amendment rights and Fourteenth Amendment to the United State Constitution.

97.     Defendants' unconstitutional policies, customs or practices or their failure to implement policies, customs or practices and training regarding the treatment of arrestees suffering from drug overdose were the legal and proximate cause of Sarah's death.

98.     The acts and omissions of each Defendant caused Sarah's death and Plaintiff's damages.

99.     Defendants' actions and omissions were reckless, willful, wanton, and in callous disregard of Sarah's healthcare needs. As such, punitive damages should be awarded against them to deter future conduct as alleged here

100.    Through the acts and omissions described herein, Defendants intentionally deprived Sarah Circle Bear of the securities, rights, privileges, liberties, and immunities guaranteed by the United States Constitution, and caused her death.

101.    Pursuant to 42 U.S.C. §1988, Plaintiff is entitled to ask the court for reasonable attorney's fees and litigation expenses if Plaintiff prevails.

## COUNT THREE: Fourteenth Amendment Equal Protection Clause
## (Against All Defendants)

102.    Plaintiff realleges and reasserts all prior paragraphs of this Complaint as though fully set forth herein.

103.    The Fourteenth Amendment of the United States Constitution affords equal protection of the law and prohibits discrimination on the basis of race.

104.    Racial profiling is discrimination based on race.

105.    Race is a suspect classification and any discrimination on the basis thereof should be afforded the strictest scrutiny.

106.    Roberts County Jail and Brown County Jail are vicariously liable for Defendants having racially profiled and discriminated against Plaintiff on the basis of her race.

107.    The individually named Defendants as well as the named Doe Defendants not only participated in the unconstitutional acts but also failed to intervene in the unconstitutional acts.

108.    Defendants violated Plaintiff's Fourteenth Amendment right to be free of racial discrimination.

109.    As a direct and proximate result of the Defendants' conduct set forth above, Sarah Lee Circle Bear died after being subjected to nearly fifty (50) hours of pain and extreme suffering.

110.    Defendants' conduct was willful, wanton, malicious, and in utter disregard and indifference for Sarah Circle Bear's legal rights, warranting imposition of punitive damages.

111.    Pursuant to 42 U.S.C. §1988, Plaintiff is entitled to ask the court for reasonable attorney's fees and litigation expenses if Plaintiff prevails.

## COUNT FOUR: State Law Claim for Negligent Medical Care and Treatment
### (Against all named Defendants)

112.    Plaintiff incorporates all other paragraphs of this Complaint for purposes of this claim.

113.    All named Defendants herein had a duty to provide reasonable medical care and treatment to persons who are in their care, control, and custody, including Sarah Circle Bear.

114.    All named Defendants breached their duty of care and were negligent when they failed to provide Sarah with reasonably obtainable and necessary medical treatment.

115.    Defendants acted on their own behalf and on behalf of their employers when they committed the acts giving rise to the claims against them contained in this Complaint and which may later be learned of through discovery.

116.    Defendants Sheriff Milbrandt, Sheriff Jay Tasa, Robert County Jail, Brown County Jail, and Brown County Sheriff's Department are liable to Plaintiff for any harm caused by employees acting on their behalf.

117.    Because Defendants acted not only on their behalf, but also on behalf of Defendants Sheriff Milbrandt, Sheriff Jay Tasa, Robert County Jail, Brown County Jail, and Brown County Sheriff's Department when they committee wrongful acts against Sarah, Defendants Sheriff Milbrandt, Sheriff Jay Tasa, Robert County Jail, Brown County Jail, and Brown County Sheriff's Department are liable to Sarah for the harm caused by those acts or omissions.

118.    Defendants' negligence proximately caused Sarah's significant physical and mental pain and suffering and death.

119.    Defendants' conduct was willful, wanton, malicious, and in utter disregard and indifference for Sarah Circle Bear's legal rights, warranting imposition of punitive damages.

## COUNT FIVE: Breach of Contract

120.    Plaintiff hereby incorporates by reference the allegations of the previous paragraphs as though fully set forth herein.

121.    Upon information and belief, Roberts County Jail was under contract with Sheriff Jay Tasa to run and operate Robert County Jail and to provide medical services to inmates at Roberts County Jail.

122.    Upon information and belief, Roberts County Jail was under contract with Roberts County and/or John/ Jane Doe to run and operate Robert County Jail and to provide medical services to inmates at Roberts County Jail.

123.    Upon information and belief, Brown County Jail was under contract with Sheriff Sherriff Mark Milbrandt to run and operate Brown County Jail and to provide medical services to inmates at Brown County Jail.

124.    Upon information and belief, Brown County Jail was under contract with Brown County or John/ Jane Doe to run and operate Brown County Jail and to provide medical services to inmates at Brown County Jail.

125.    Both Brown County and Roberts County never maintained proper staffing levels at Brown County Jail and Roberts County Jail.

126.    According to an audit, Roberts County Jail was found to have, among other things, failed to correct report and reconcile inmate funds and their accounts as well as failed to report and reconcile other accounts.

127.    Plaintiff is a third-party beneficiary of the contracts as stated herein.

128.    Upon information and belief, the contracts as stated herein mandate that Roberts County Jail and Brown County Jail will abide by all laws of the State and Federal Government.

129.     Defendants breached several aspects of their contract that were significant in how medical care was provided to inmates including Sarah including but not limited to:

    a.   Failing to conduct a Mortality review;

    b.   Failing to have adequate staffing to address the medical needs of inmates such as Sarah;

    c.   Having more than the allowed number of inmates causing overcrowding and resulting in inadequate care of the inmates housed at the facility; and

    d.   Violating Sarah's Federal and State rights as set forth herein.

130.     Defendants owed Plaintiff a duty to abide by its contract.

131.     Defendants breached its duty to Plaintiff when, upon information and belief and as stated herein, the laws of the State and Federal Government as well as policies and procedures were violated to the detriment and harm of Plaintiff, as stated with greater specificity herein.

132.     As a result of Defendants' breach Plaintiff has suffered damages including loss of chance, loss of enjoyment of life, hedonic damages, pain and suffering, and mental and emotional trauma, and death.

## COUNT SIX: LOSS OF CONSORTIUM

### Zachery Wayne Alan Pahl and Aiden Lane Pahl
### Against all named Defendants

133.     Plaintiffs hereby incorporate by reference the allegations of the previous paragraphs as though fully set forth herein.

134.     Defendants, through the acts and omissions stated herein caused the damages to Sarah, her Estate, and her surviving minor children.

135.     As Sarah's minor children it was foreseeable that Zachery Wayne Alan Pahl and Aiden Lane Pahl would be harmed by the injuries sustained by their mother Sarah.

136.     As a result of the acts and omissions of Defendants herein, Zachery Wayne Alan Pahl and Aiden Lane Pahl are forced to grow up without the companionship, guidance, love, enjoyment, and support of their mother – Sarah Circle Bear.

137.     As a direct and proximate result of the acts or omissions of Defendants herein, Zachery Wayne Alan Pahl and Aiden Lane Pahl suffered damages including emotional pain and suffering, loss of consortium, loss of enjoyment of life, and loss of financial support.

## DAMAGES

138.     Plaintiff incorporates and adopts by reference all the facts and allegations contained in the preceding paragraphs of this Complaint.

139.     As a direct and proximate result of the forgoing events, Sarah Lee Circle Bear endured hours and days of pain and suffering and died.   Accordingly, the Estate of Sarah Lee Circle Bear is entitled to an award of compensatory damages including, but not limited to, the following specific items:

     a.     The reasonable expenses of necessary medical care and treatment and funeral and burial;

     b.     The pain and suffering experienced by the deceased between the time of injury and death;

     c.     The pecuniary loss of the deceased's life apart from her earning capacity;

     d.     The loss to the beneficiaries of other expected benefits that have a monetary value;

     e.     Attorney fees and costs;

     f.     Exemplary or punitive damages; and

     g.     All other damages allowed by law in amounts to be determined at trial.

140.    As a direct and proximate result of the acts and omissions as detailed in the Complaint, Ms. Sarah Circle Bear suffered a loss of chance of survival.

WHEREFORE, Plaintiff prays for judgment as follows: against Defendants for injuries and compensatory damages to Plaintiff in a sum to be determined and fixed by the trier of fact as to be fair and just, for the reasonable expenses of necessary medical care and treatment and funeral and burial; the pain and suffering experienced by the deceased between the time of injury and death; the pecuniary loss of the deceased's life apart from her earning capacity; the loss to the beneficiaries of other expected benefits that have a monetary value; exemplary or punitive damages; attorney fees and costs; court costs, pre- and post-judgment interest;   all other damages as allowed by law; and for such other and further appropriate relief.

Respectfully submitted,

GELLHAUS & GELLHAUS, PC

Chad Locken
Jay R. Gellhaus
120 South Lincoln Street
P.O. Box 73
Aberdeen, SD 57401
Phone: 605-225-6522
Fax: 605-225-6895

And

LAW OFFICE OF FRANCES CROCKETT

/s/ Frances C. Carpenter
Frances C. Carpenter
925 Luna Circle NW
Albuquerque, NM 87102
Phone: (505) 314-8883
Fax: (505) 835-5658

Attorneys for Plaintiff